PROUT *v.* ROBY.

1. No particular phraseology is necessary to create a separate estate for a *feme covert.* In whatever language expressed, if there is a clear intent of the parties to create the estate, it is created.
2. A lease of land for a term of years on a ground-rent, fixed, to P. " in trust for J. M. (a married woman), her heirs and assigns," with a covenant on the part of the lessor that on payment of a principal sum named, he will, at any time, convey the land in fee to " the said J. M.,

her heirs and assigns," cuts off all the rights of the husband in the fee. The covenant to convey passes to the heir of the woman.

3. In such a case, where the woman dies intestate, leaving no personal representative, and the lessor during the continuance of the lease, without any proper re-entry or right, takes possession and receives the rents of the land, the heir of the woman on a bill filed by her heir for an account and a payment of the ground-rents out of the other rents and an application of the surplus to the payment of the principal on payment of which a conveyance in fee was to be had, and for a conveyance accordingly, may proceed against the lessor or his heir alone. A representative of the woman as a defendant is, in such a case, no necessary party.

4. Where on a bill by one asserting himself to be the heir-at-law of another, the answer denies the heirship, and on an issue directed, the heirship is found, and the court decrees for the complainant accordingly, no objection being made to anything that occurred at the trial and no application to set aside the verdict, this court will not, in the absence of the evidence given before the jury, go behind the decree of the court.

5. At the common law, where a right of re-entry is claimed on the ground of forfeiture for the non-payment of rent, there must be proof of a demand of the precise sum due, at a convenient time before sunset upon the day when the rent is due, upon the land, at the most notorious place of it, though there be no person on the land to pay.

APPEAL from the Supreme Court of the District of Columbia; in which court John Roby, asserting himself to be grandson and heir-at-law of a certain Jane Mallion, filed, A.D. 1865, a bill against Robert Prout (the now appellant), in order to have an account taken of rents received by him, the said Robert, from a lot on Capitol Hill, Washington, D. C., leased A.D. 1820, on a small ground-rent, by William Prout, ancestor of him, the said Robert, to one Porter "in trust for the said Jane Mallion, her heirs and assigns," with a right on the part of her and them to have, *at any time*, a conveyance in fee simple on payment of the principal of the rent; and on which lot (the said Jane dying A.D. 1852 intestate and leaving no personal representative) the said Robert Prout, without any such demand on the premises, of arrears of rent, as gave him a right of re-entry, had assumed to re-enter as for a common-law forfeiture; and the bill praying, moreover, in the event of certain findings, a conveyance in fee simple to him, the said John Roby, complainant.

*Mr. Bradley, for the appellant; Mr. Totten, contra.*

Mr. Justice SWAYNE stated the facts and delivered the opinion of the court.

On the 14th of April, A.D. 1820, William Prout, the ancestor of the appellant, leased to Jonathan Porter, as trustee for Jane Mallion, the premises described in the bill. The lease was for the term of ninety-nine years, and was renewable for successive terms of that duration forever. Rent amounting to $25.80 was to be paid at the end of each succeeding year, while the lease should subsist. It was stipulated that if the rent should at any time be due and unpaid for the period of sixty days, and there should not be sufficient property upon the premises wherefrom to make the amount due by levy, the lessor, his heirs or assigns, might re-enter and hold the premises as if the lease had not been executed. It was further stipulated that if Porter, as such trustee, or Jane Mallion, her heirs or assigns, should *at any time* thereafter pay to the lessor, his heirs or assigns, the sum of $430 over and above the rents then due, the lessor, his heirs or assigns, should thereupon execute to Jane Mallion, her heirs or assigns, a deed of release for the leasehold premises. There was a further provision that Jane Mallion might dispose of her interest in the premises by will, and that the will should pass the title which she held, subject to the conditions and requirements of the lease, in favor of the lessor, his heirs and assigns. The bill alleges that Jane Mallion left but one child, Mary Ann Roby, her only heir-at-law, who was the original complainant in this litigation. Porter died many years before this bill was filed. It does not appear that he left any heir, or that there has ever been any legal representative. Prout, the lessor, also died many years ago. The appellant holds title to the leasehold premises by descent and partition. Upon the death of Jane Mallion, Vandora Mallion, her husband, who survived her, assumed the possession and control of the property and received the accruing rents down to his death, which occurred in February, 1853. He devised all his property, real, personal, and mixed, to the Reverend Edward Knight, now also deceased. Knight claimed and possessed the leasehold estate under

the will, and received the rents until a subsequent period, when he abandoned the possession thus acquired. At a later period the appellant entered into possession and has since received the rents and appropriated them to his own use. The bill prays for an account, that the appellant be credited with the stipulated rent and the stipulated purchase-money, and if the rents and profits which he has received exceed the amount of these items that he be decreed to pay the surplus and convey the premises; and if the rents and profits received fall short of his credits, that then upon payment of the amount of the difference, he be decreed to convey. The defendant answered, and testimony was taken by both parties. The complainant died *pendente lite,* and her son and only heir-at-law, John T. Roby, was made complainant in her place by a bill of revivor. The defendant denied that Mary Ann Roby was the child of Jane Mallion. The court below ordered this question to be submitted to a jury in the proper court of law, and that both parties should be at liberty to read upon the trial all the depositions taken in the case pertinent to the issue. The jury found for the complainant and the verdict was certified back to the Equity court. It does not appear that any motion was made by the appellant in either court for a new trial, nor does it appear whether any evidence in addition to that specified in the order of the court was or was not given to the jury. The Equity court decreed for the complainant, and the defendant thereupon removed the case to this court by appeal.

No particular phraseology is necessary to create the provision for *a feme covert* technically designated in the law as her *separate estate.* As in all other cases of instruments to be construed, the controlling test is the intent of the parties. That, in whatever language it may be clothed, constitutes the contract. Here the meaning is so clear that no room is left for doubt. The intervention of the trustee and the power of disposition by will, could have had no purpose but to give to the *cestui que trust* the same power over the lease as if she had been *a feme sole,* and to place it beyond the

reach and control of her husband both during her life and
after her death. These facts are irreconcilable with any
other view of the subject. No interest in the lease could
vest in the husband without some act on her part in his
favor. No such act was done. His assumption of control
over the premises after her death was simply usurpation,
and no right or title passed under his will to his devisee.
What he did and what Knight did may therefore be laid out
of view, as of no legal consequence in the case. It is not
shown that there is, or ever was, any personal representa-
tive of Jane Mallion. The maxim applies that what does
not appear is to be presumed not to exist.

It is insisted by the counsel for the complainant that the
proofs are insufficient to establish the heirship of Mary Ann
Roby. It was competent for the court which tried the
issue, and for the court which ordered it to be tried, to set
aside the verdict and award a new trial, or the latter court
might at the hearing have disregarded the verdict if it were
proper to do so, and it is within the power of this court to
do the same thing.* But it does not appear that the appel-
lant objected to anything that occurred during the progress
of the trial, nor that he took any action in either court touch-
ing the verdict after it was found, nor does it appear what
evidence oral or otherwise was before the jury. The court
having decreed according to the finding, we think the ap-
pellant should be held concluded, and that under the cir-
cumstances we ought not to go behind it in our examination
of the case. The testimony in the record fails to satisfy us
that the verdict ought to be disregarded. The objection
comes from the party called upon to convey, under the cove-
nant of one with whom he is in privity of blood and estate.
If Mary Ann Roby were not the heir-at-law, the true heirs,
whenever they appear, not being parties, will not be affected
by this litigation.

The re-entry of the appellant cannot avail him. If there
had been a personal representative of Jane Mallion after

---

* 2 Daniel's Chancery Practice, Metcalf's edition, 1147, notes 8 and 10.

her death, the title to the leasehold term being personalty, would have passed to and vested in him. There being no such representative, it fell into abeyance, and has since so continued. The covenant to convey, passed by descent to the heir-at-law as if it had been contained in a separate instrument. If there had been a personal representative with sufficient assets, the heir could have called upon him to pay the purchase-money.* In that event, the personal representative would have been a necessary party. But the heir asks no such relief. He proposes to make payment *aliunde.* Hence there is no necessity for the presence of an administrator. If the covenant had been to convey, upon the payment of the purchase-money during the life of the lease, putting an end to the lease would have destroyed the covenant. But the covenant is to convey whenever the purchase-money should be paid. In such cases the conveyance may be demanded at any time, and the existence or non-existence of the lease when the demand is made is immaterial to the rights of the parties.† But if the covenant were different in this particular from what it is, and belonged to the class first mentioned, the result would be the same. The re-entry was without effect. *Connor* v. *Bradley and wife*‡ was a case arising in the city of Washington, under a lease of the same lessor, and identical as regards the right of re-entry with the one here under consideration. It was there said that the statute of 4 George II, ch. 28, was in force in the county of Washington. Upon examination, that statute is found to contain nothing applicable to this case. This leaves the rights of the parties to be determined by the common law. In that case this court said: "It is a settled rule at the common law, that where a right of re-entry is claimed on the ground of forfeiture for the non-payment of rent, there must be proof of a demand of the precise sum due, at a convenient time before sunset upon the day when the rent is due, upon

---

* Chitty on Descents, 10, 13, 250; Platt on Covenants, 514; Fry on Special Performance, 103; Seton *v.* Slade, 7 Vesey, Jr., 279, note; Daniels *v.* Davison, 16 Id. 253, note.

† 1 Shepherd's Touchstone, 169.          ‡ 1 Howard, 217.

the land, at the most notorious place of it, though there be no person on the land to pay." The legal propositions thus stated, are fully sustained by the authorities.*

In this case it is not shown that any demand was ever made upon the premises. It is in proof that an officer went there twice to distrain for rent in arrear, and that he did not find sufficient property to satisfy the costs, but when this occurred, and what amount of rent was then claimed to be in arrear, is not disclosed. This testimony is wholly immaterial. If the requirements of the law had been complied with, or if the appellant had enforced the forfeiture by a recovery in ejectment, upon tender of the amount due with interest and costs at the proper time, relief would have been given; in the former case in equity by injunction, and in the latter by motion and stay of execution.† Where it is necessary to take an account between the parties, no tender need be made before bringing the bill.‡ This subject was fully examined in *Sheets* v. *Selden*.§

The appellant is entitled to be paid the rent in arrear, and the amount of his expenditures for taxes, both with interest, and the purchase-money, before he can be required to convey. All this we understand to be carefully provided for in the decree of the court below. The directions for taking the account are clear and explicit. The appellant is entitled to nothing more.

DECREE AFFIRMED.

---

* Coke Lit. 201; B. 1 Saunders, 287, n. 16; Doe ex dem. Wheeldon v. Paul, 3 Carrington & Payne, 613; Smith v. Whitbeck, 13 Ohio State, 471; Taylor's Landlord and Tenant, § 493, note 6.

† 2 Story's Equity, §§ 1315, 1316; Wadman v. Calcraft, 10 Vesey, Jr., 68; Hill v. Barclay, 18 Id. 63.

‡ O'Mahony v. Dickson, 2 Schoales & Lefroy, 400; O'Connor v. Spaight, 1 Id. 305.

§ 7 Wallace, 420.