## BEAN *v.* REYNOLDS.

LEASEHOLD; DESCENT AND DISTRIBUTION; OPTION TO PURCHASE.

1. A leasehold interest in land is personal property and goes to the personal representative of the lessee and not to his heirs at law.

2. Where a right is given in a grant of a leasehold interest in land for ninety-nine years to the lessee, his executors, administrators and assigns to purchase the fee simple title for a specified sum at any time during the term, such right of purchase does not descend to the heirs at law of an intestate assignee of the leasehold, but passes, through the process of administration, to his personal representative, upon whom is also devolved the leasehold interest.

No. 877. Submitted May 11, 1899. Decided June 6, 1899.

HEARING on an appeal by two of several defendants from

a decree granting the relief prayed for in a bill in equity to compel the conveyance of certain real estate. *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. Daniel O' C. Callaghan* for the appellants:

The option to purchase the fee simple descended to the heirs at law of the intestate. *Prout* v. *Roby,* 15 Wall. 471; *Seton* v. *Slade,* 7 Ves. Jr. 274; *Broom* v. *Monck,* 10 Ves. 605; *Daniel* v. *Davison,* 16 Ves. 253.

*Mr. Chas. Cowles .Tucker* for the appellee:

This ninety-nine year leasehold interest is a chattel real, and therefore, personal estate, and upon the death of Thomas Reynolds, his administratrix became entitled to take the chattel real and to distribute it under the express provision of the act of Maryland of 1798, Ch. 101, Subch. 7. This asset as personalty was distributable by sale or in kind, by the administratrix, one-third to herself as the widow of the intestate, and two-thirds to the daughter, Clara V. *Wilton* v. *Holmes,* 9 Md. 281; *Hewitt's Case,* 3 Bland, 184; *Neal* v. *Hazelthorp,* 3 Bland, 551; *Alexander* v. *Stewart,* 8 G. & J. 244; *Hanson* v. *Branner,* 2 Md. 103. Upon the death of Clara V. Reynolds, her undivided two-thirds interest in the chattel real became distributable under the statute of distribution to her mother, the appellee, and the appellee is now entitled to administer upon this asset, as the administratrix of her husband and daughter, and in administering the same is entitled to distribute it to herself as the distributee of her husband and daughter. The appellee is the owner of the leasehold, and entitled to use and occupy it for the full term of the lease, which, created as it was in 1856, will not expire until 1956.

To hold that the appellee, who undoubtedly is the owner of this chattel real, has no right to receive by deed the fee simple, because, although she has the right to purchase that title, the covenant of the original lessor was to convey to the

heirs at law and not to the next of kin of the lessee, would be in effect to create a perpetuity; for if this bill should be dismissed the appellee would still remain the owner of the leasehold interest and at the end of the demised term would have the right in equity to compel a renewal of the lease for 99 years at the expiration of the present term. See *Banks* v. *Haskie*, 45 Md. 207 ; *Taylor* v. *Taylor*, 47 Md. 295, and *Presttman* v. *Silljacks*, 58 Md. 319.

Mr. Justice MORRIS delivered the opinion of the Court:

From the record in this case the following facts appear. By a deed dated on March 1, A. D. 1856, one Ulysses Ward conveyed to one Thomas Norfleet a leasehold interest for ninety-nine years in a piece of land in square 399, in the city of Washington, upon condition of the payment of a yearly rent of $29.30, exclusive of all taxes, public dues, and charges of every kind, with the right or privilege to said Norfleet, his executors, administrators, or assigns, at any time during the continuance of the lease, to purchase the land in fee simple for the sum of $483.33, over and above any and all arrears of rent that might be due. By a deed dated June 9, 1864, Norfleet conveyed to one Horatio R. Maryman; and by a deed of January 23, 1867, Maryman conveyed to Thomas Reynolds. Both deeds conveyed the privilege of purchase, as well as the leasehold interest.

Thomas Reynolds died in the year 1871, possessed of the property, intestate and leaving surviving him his wife, the appellee, Virginia C. Reynolds, who became the administratrix of his estate, and one child by the marriage, Clara V. Reynolds, who was both the sole heir-at-law and next of kin of her deceased father, Thomas Reynolds, and who died intestate, unmarried and without issue about the year 1887. There was no administration upon the estate of Clara V. Reynolds before the institution of the proceedings now before us; but during the pendency of those proceedings, they were suspended for the purpose of enabling the appellee,

who had instituted the proceedings, to procure letters of administration on that estate; and such letters were accordingly procured by her.

Controversy arose as to whether the property in the hands of Thomas Reynolds was real or personal property. If it was real estate, the title devolved at his death upon his daughter, Clara V. Reynolds; and at her death it went to the appellants, who were or claimed to be her nearest heirs on the father's side. If it was personal property, it passed to the appellee as administratrix of the estate of Thomas Reynolds, to be divided, upon the settlement of that estate, if there were no claims of creditors against it, between the appellee and her daughter, Clara V. Reynolds, and now, in consequence of the death of the latter, to become wholly the property of the appellee. The appellants, Benjamin A. Bean and Annie C. Paxton, claiming to be heirs at law of Clara V. Reynold on the side of her father, Thomas Reynolds, purchased from the persons who are supposed to have stood in the place of Ulysses Ward the fee simple title to the property for the sum of $483.33, the amount stipulated in the lease. This was in May, 1897. Thereupon, on August 16, 1897, the appellee, who had always remained in possession of the property since the death of her husband, instituted the present proceedings by filing her bill in equity against Benjamin A. Bean and Annie C. Paxton, and against William H. Duncanson and James F. Scaggs trustees, to whom Benjamin A. Bean and Annie C. Paxton had conveyed the property to secure a loan of $675 to them from the Perpetual Building Association, alleged in the bill of complaint to be a body corporate, but which afterwards appeared to be an unincorporated voluntary organization, to require them to unite in a deed of conveyance to the complainant of the legal title to. the property, upon the payment by her of $483.33 and the sum of $57.31, which she admitted to be due under the lease for rent in arrears.

Subsequently, when a demurrer to the bill had been sus-

tained on the ground that there had been no administration had on the estate of Clara V. Reynolds, and when thereupon such administration was had, an amended and supplemental bill was filed, in which that fact was stated, and certain officers of the Perpetual Building Association were made parties instead of that association itself as a supposed body corporate.

There is considerable confusion in regard to the defense. Commingled demurrers, pleas, and answers were filed without much regard to their effect on each other or to the rules of pleading in equity.    But the outcome of the whole seems to be that there is no substantial issue of fact between the parties, and that the only controversy is as to the legal effect of the deeds of conveyance which have been mentioned. No testimony was introduced other than these deeds, which are made exhibits in the case; and it was agreed that the cause should be heard on the pleading and these exhibits, which was accordingly done.    At the hearing it was decreed that, upon the payment by the complainant of the stipulated sum of $483.33, some arrears of rent, interest, and some minor sums, the defendants, Benjamin A. Bean and Mary F. Bean, his wife, Annie C. Paxton, and William E. Paxton, her husband, and James F. Scaggs and William H. Duncanson, trustees, should unite in a deed of conveyance of the property in fee simple to the complainant, Virginia C. Reynolds.    There were also some other provisions in the decree which are not here of importance.

Benjamin A. Bean and Annie C. Paxton appealed from the decree.    No appeal was taken on behalf of the building association or of its trustees or officers.    There being nothing in the nature of a summons and severance, a motion was made to dismiss the appeal; but that motion was postponed to the hearing on the merits.    In the view which we take of the merits, it is unnecessary to determine this motion.

The question presented by the appeal is, whether a lease-

15 Ct. App.—10

hold interest for ninety-nine years, accompanied by a right
granted in the lease to the lessee, his executors, administra-
tors, and assigns, to purchase the fee simple title to the
property at any time during the continuance of the lease
for a stipulated sum of money, is realty which goes to the
heir at law of an intestate assignee of the leasehold interest,
or personalty which passes through the process of adminis-
tration to the personal representative or next of kin of such
intestate assignee; or rather, the question is, whether the
right of purchase in such case descends to the heir, while
the leasehold interest itself devolves upon the personal rep-
resentative. For there can be no question under the com-
mon law in force in this District that a leasehold interest in
lands is personal property and as such goes to the personal
representative and not to the heir at law. This is ele-
mentary law, and is recognized as such in the principal
case of *Prout* v. *Roby*, 15 Wall. 471, cited on behalf of the
appellants. And this being so, there can be no question
that in the case before us the leasehold interest created by
the deed of Ulysses Ward of March 1, 1856, became and is
now vested in the appellee, Virginia C. Reynolds.

But, under the authority of the case of *Prout* v. *Roby*, it
is contended, on behalf of the appellants, that the option to
purchase the fee simple within the term descended to the
heirs at law of Thomas Reynolds. The facts, however, in
the case of *Prout* v. *Roby* were very different from those in
the case now before us. There the leasehold interest was
created as a trust for the benefit of a married woman, " her
heirs and assigns," and with a covenant in the lease that, if
the married woman, " her heirs or assigns," should at any
time thereafter pay a certain stipulated sum of money to the
lessor, his heirs or assigns, the latter should thereupon con-
vey the property in fee simple to the married woman, her
heirs and assigns. Moreover, the lease was perpetual, be-
ing for ninety-nine years, renewable forever. It is evident,
therefore, that, while the nominal title to the lease was in

the trustee or his personal representatives, or perhaps in the married woman, herself, or her personal representatives, yet the true beneficial interest both in the leasehold estate and in the accompanying covenant for the purchase of the fee, passed, upon the death of the married woman, to her heirs at law.   In that case the Supreme Court of the United States, by Mr. Justice Swayne, said:

"If there had been a personal representative of Jane Mallion after her death, the title to the leasehold interest being personalty would have passed to and vested in him. There being no such representative, it fell into abeyance, and has since so continued.   The covenant to convey passed by descent to the heir at law as if it had been contained in a separate instrument.   If there had been a personal representative with sufficient assets, the heir could have called on him to pay the purchase money.   In that event, the personal representative would have been a necessary party.   But the heir asks no such relief.   He proposes to make payment *aliunde*.   Hence there is no necessity for the presence of an administrator.   If the covenant had been to convey upon the payment of the purchase money during the life of the lease, putting an end to the lease would have destroyed the covenant.   But the covenant is to convey whenever the purchase money should be paid.   In such cases the conveyance may be demanded at any time, and the existence or non-existence of the lease when the demand is made is immaterial to the rights of the parties.   But if the covenant were different in this particular from what it is, and belonged to the class first mentioned, the result (that is, the practical result in the case under consideration) would be the same."

From all this it is very clear that the circumstances of the case of *Prout* v. *Roby* were very different from those of the present case.   There a trust was created for the benefit of a married woman and her heirs; and to her and to her heirs the right was given to augment the trust by the

purchase of the fee simple title. It was not intended by the decision in that case to change the laws governing the devolution of property, real or personal; nor was it intended to be held that in all cases, where a leasehold interest was created, a covenant for the purchase of the fee should, upon the death of the lessee intestate, become separated from the leasehold interest and vest in a different person. Even a casual glance at the consequences of such an interpretation of the decision will show that no such a construction of it was intended. For if, upon the death of the lessee intestate, the leasehold interest devolved upon one party, the personal representative, and the right of purchase on the heir-at-law, and we assume them to be different persons, as they might well be, then it would be in the power of either one to destroy the interest or right of the other. The personal representative, by surrendering the lease, might destroy the right of the heir to purchase; and the heir, by purchasing the fee, might cause the leasehold interest to be merged in the fee. It is evident that the decision in the case of *Prout* v. *Roby* applies only where, at least in equity, if not in law, the leasehold interest and the right to purchase the fee are vested in one and the same person.

This can not be the case where the leasehold interest devolves as substantial personal property, and not merely in title alone, upon the personal representative of the deceased lessee, the executor or administrator, to be disposed of by him under the statute of distributions or according to the special provisions of a last will or testament. Here the covenant for purchase is a covenant that runs with the land in the possession of such personal representative, distributee, or legatee. The express provision of the covenant is that the right of purchase is to be exercised, not by the heir at law, but the *executor, administrator or assigns* during the pendency of the term. It is true that there is some incongruity or apparent inconsistency, and perhaps some confusion in the deed, in the use of the words "*heirs and assigns*,"

and the words, " *executor, administrator and assigns ;* " but we. think that is very clear from the deed that the estate created or intended to be created was merely personalty, and that the right of purchase was intended to be exercised by the person or persons who for the time being should be in the enjoyment of the estate created. That, when the fee should be purchased, the leasehold would be merged in it and the whole estate would go thereafter as realty, can, of course, make no difference in the determination of the person or persons who are to exercise the right of purchase. The covenant is that " the said Ward, his heirs, executors, and administrators, doth covenant, promise and agree to and with the said Norfleet, his heirs, executors, administrators, and assigns, that *the said Norfleet, his executors, administrators and assigns,* may, at any time during the continuance of the present term or demise, purchase the said piece or parcel of land, etc., etc."; and from this covenant the word " *heirs* " seems to have been studiously excluded from the enumeration of those who may elect to purchase the land for the stipulated price.

The deed from Norfleet to Maryman, which apparently was intended to be executed also by Ward, the original grantor, but which does not seem in fact to have been executed by him, follows closely the deed from Ward to Norfleet, and recites the covenant for purchase in the same precise language. But the deed from Maryman to Thomas Reynolds, which is more specifically the chart of the rights of the latter and of his representatives, both real and personal, nowhere in any part of it uses the word " heirs " and nowhere purports to convey any right of inheritance. It deals throughout with personal property and personal rights; and all its grants and covenants are to and with Reynolds and his personal representatives exclusively, and apparently with studious purpose that they should be so, and not with him and his heirs at law. So that even if it should be construed that, under the previous deeds, Norfleet and

Maryman took any right or interest proper to be regarded as a right or interest of inheritance, which we do not hold, no such right was conveyed to Reynolds by the deed from Maryman. The conveyance from Maryman to Reynolds purports to be in express terms to him, *"his executors, administrators and assigns,"* to whom, and not to the heirs at law, it is provided that all the rights and covenants of the original lease shall inure.

Whatever doubt, therefore, there might have been as to the respective rights of the heirs at law and the next of kin of Norfleet as between themselves, or as to the respective rights of the heirs at law and next of kin of Maryman as between themselves, if any of them had chosen to exercise the option to purchase, there can be no doubt, in our opinion, that only the personal representatives of Thomas Reynolds and Clara V. Reynolds, and not their heirs at law, are entitled to exercise that option, and to have the benefit of the covenant for the purchase of the fee simple title to the property.

The appellee, Virginia C. Reynolds, is now the personal representative both of Thomas Reynolds and Clara V. Reynolds; and in her are vested all the estate in the premises, and all the right, title and interest that were vested in Thomas Reynolds, under the deed to him from Maryman, together with all the appurtenant rights and privileges, including the right to purchase granted in the deed from Ward to Norfleet. To this effect was the decision of the Supreme Court of the District of Columbia in the decree appealed from; and we think that decision was right and just.

The decree appealed from will therefore be *affirmed, with costs; and the cause will be remanded to the Supreme Court of the District of Columbia for the due execution of said decree. And it is so ordered.*