AMERICAN ENGINEERING CO. v. METROPOLITAN BY–PRODUCTS CO., Inc.

(Circuit Court of Appeals, Second Circuit. June 28, 1920. On Petition for Rehearing, July 27, 1920.)

No. 238.

1. **Limitation of actions ☞111—Action on bond suspended by acquiescence in receivership and injunction suit.**

The provision of a bond given by lessee to secure performance of the covenants of the lease, limiting actions on the bond to three months, is suspended where the lessee acquiesced in the appointment of receivers and the enjoining of all actions against it.

2. **Landlord and tenant ☞194(1)—Refusal of tenant's receivers to take possession held not surrender, but re-entry by lessor.**

Where a lease authorized surrender of the premises by the lessee on certain terms, and also authorized re-entry by the lessor for breach of covenant by the lessee, and receivers of lessee refused to take possession under the lease or to pay rent, whereupon lessor re-entered, there was no surrender of the lease by the lessee, which took no action whatever, and the lessor cannot recover under the terms relating to surrender.

3. **Receivers ☞147—Tenant's receivers liable for quarter's rent in advance, accrued the day before re-entry.**

Where, under the terms of the lease, the rent was payable quarterly in advance on April 1st, the lessee is liable for a full quarter's rent after the lessor took possession for breach of covenant on April 2d, though Code Civ. Proc. N. Y. § 2674, makes the rent apportionable between persons claiming through the landlord.

4. **Receivers ☞147—Clause requiring payment for maintenance not applicable as against lessee's receiver after lessor's re-entry.**

A clause requiring lessee to pay a stipulated sum for maintenance of the property after it discontinued the use thereof does not entitle lessor to recover that sum from the lessee after the lessor has re-entered for breach of covenant to pay rent.

5. **Limitation of actions ☞167(1)—Bar of action on bond available against enforcement of claim to collateral to secure bond.**

Where a lessee gave bond to secure performance of its covenant, and also deposited a fund as collateral to secure any amounts due on the bond, a cause of action cannot be enforced against the collateral fund after recovery therefor on the bond is barred.

6. **Receivers ☞163—Interest properly allowable out of fund specially appropriated to pay claims.**

Though interest is not allowable against property in the hands of receivers, it may be allowed out of a fund specially appropriated, before the receiver was appointed, to pay the claims with interest.

7. **Landlord and tenant ☞160(2)—Lessee held not required to return property in good working condition.**

Where the lease required the return of the property on termination of the lease in as good condition as when received, the lessor is not entitled to damages for failure to return the property in good working condition.

On Petition for Rehearing.

8. **Landlord and tenant ☞277(½)—Provision regulating ejectment not applicable to peaceable re-entry by landlord.**

The provisions of Code Civ. Proc. N. Y. §§ 1504–1510, regulating ejectment for nonpayment of rent are not applicable to a case of peaceable re-entry by the landlord in accordance with the lease.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the District Court of the United States for the Eastern District of New York.

Suit by the American Engineering Company against the Metropolitan By-Products Company, Incorporated, asking for the appointment of receivers. From an order of the special master, disallowing in part the claim of the New York Sanitary Utilization Company, that claimant and others appeal. Decree reversed, with directions.

Lewis & Kelsey, of New York City (Frederick T. Kelsey and Wallace T. Stock, both of New York City, of counsel), for receiver of Metropolitan By-Products Co., Inc.

Oscar A. Lewis, of Brooklyn, N. Y. (A. B. Reed, of Brooklyn, N. Y., of counsel), for Title Guarantee & Trust Co.

Cullen & Dykman, of Brooklyn, N. Y. (Edgar M. Cullen and Arthur E. Goddard, both of Brooklyn, N. Y., of counsel), for Bailey and others.

Davison & Underhill, of Brooklyn, N. Y. (Harold C. McCollom and Alfred T. Davison, both of New York City, of counsel), for Columbia Trust Co.

Gilbert & Wessel, of New York City (Harry N. Wessel and Carl J. Austrian, both of New York City, of counsel), for R. S. Kuh & Valk Co.

Nicoll, Anable, Fuller & Sullivan, of New York City (Outerbridge Horsey, of New York City, of counsel), for Sanitary Co.

Before WARD, HOUGH and MANTON, Circuit Judges.

WARD, Circuit Judge. November 28, 1916, the Sanitary Company entered into a lease of its garbage plant and equipment of boats, tools, horses, mules, wagons, etc., at Barron Island, Kings county, N. Y., to the Metropolitan By-Products Company, Incorporated, for a term of two years from January 1, 1917, for an aggregate rent of $500,000; $62,500 payable quarterly in advance on the 1st days of January, April, July, and October. The material provisions are:

"Third. The lessee agrees to keep all buildings, machinery, boats, and other appliances, including all personal property leased hereunder, in good and proper condition during the continuance of this lease, and further to properly feed, care for, and protect the animals covered by this lease. All to the end that at the termination of this lease, whether by expiration of the term thereof or otherwise, the plant, its equipment, and all other personal property herein referred to shall be returned to the lessor in good efficient working condition, considering the general character of the plant and the work to be carried on therein under said contract, reasonable wear and tear excepted.

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

"Seventh. The lessee further agrees that, if default be made in any of the covenants and agreements herein contained, this said hiring and relation of landlord and tenant, shall wholly cease and determine; and the lessor shall and may, by summary proceedings or otherwise, re-enter said premises and remove all persons therefrom, and retake possession of any and all personal property leased hereunder, and the lessee hereby waives any notice in writing of intention to re-enter or to institute summary proceedings: Provided, however, that such termination and re-entering or institution and carrying on to completion of summary proceedings for the recovery of the possession of the property shall not absolve the lessee from liability for damages resulting from

such default nor from liability for payments to be made under this lease to the date of termination thereof, nor from liabilities then accrued and whether then payable or payable in the future, with the same effect as if the said lease had not been terminated : And provided, further, that anything herein to the contrary notwithstanding, the lessor shall not be entitled to enter said premises for any breach of covenant or condition nor to institute summary proceedings for the recovery of the said property, except the covenant to pay rent, water rates, and taxes, without first having given the lessee 60 days' notice of the alleged breach of covenant or condition and an opportunity of making good such breach within said period of 60 days : And provided, further, that in case the lessee shall be advised that any rule, order, ordinance, or regulation in respect of the leased plant and equipment or the management thereof shall be invalid or unenforceable and shall contest the same in the courts, the lessee shall not be in default hereunder for its failure to comply with the contested rule, order, ordinance, or regulation until a final determination of the courts upholding the same and after the expiration of a reasonable time thereafter for compliance therewith : And provided, further, that the said lessee shall duly notify in writing the lessor of its intention to contest such rule, order, ordinance or regulation. .

\* \* \* \* \* \* \* \* \* \* \* \*

"Twelfth. If in the discretion of the lessee it sees fit to discontinue at any time prior to the 31st day of December, 1916, the use of the property leased hereunder, or any substantial portion thereof, in the reduction and final disposition of the said garbage of the boroughs of Manhattan, the Bronx, and Brooklyn, the lessee shall have the option either of maintaining, protecting and keeping in good and proper condition at its own expense the property leased hereunder in accordance with the provisions herein, or of paying to the lessor, when the rental installment payments provided for herein are paid, sums pro rata to the aggregate sum of ten thousand dollars ($10,000) for the unexpired term of the lease and thereafter be relieved and discharged from any further obligations to maintain, protect, and keep in good and proper condition the said property pursuant to the requirements herein, or such portion thereof as to which the said use may have been discontinued; it being understood and agreed, however, that nothing in this paragraph herein contained shall relieve the lessee from any of its obligations as set forth in paragraph third hereof up to and until such time as there shall be any discontinuance of the use of the property leased hereunder as provided for in this paragraph.

"Thirteenth. Inasmuch as it is contemplated that the leased property hereinabove described will be taken over at midnight on the 31st day of December, 1916, as a going concern and as the said plant is now being operated by the New York Disposal Company, a New York corporation, under an agreement with the city of New York to dispose of the garbage of the boroughs of Manhattan, the Bronx, and Brooklyn, an adjustment will be made between the lessor or the New York Disposal Company and the lessee in respect of all supplies on hand, such as coal, oil, naptha, and other supplies, which are consumed in the operation of said plant. The lessee is to pay the lessor or the New York Disposal Company the value of such materials at the time they are taken over, and the said New York Disposal Company is also to be given a reasonable opportunity to store and dispose of all finished products which may be on hand at said plant when this lease shall go into effect; but in any event the lessor shall cause all storage products to be removed fast enough to make room for the lessee's products as manufactured. The lessee is to have a similar privilege and there is to be a similar adjustment between the lessor and the lessee upon the expiration of this lease."

On the same day the Metropolitan Company executed a bond to the Sanitary Company in the sum of $200,000 for the faithful performance by it of the covenants of the lease, and also an agreement reciting that it had deposited with the Central Trust Company the sum of $200,000 to be invested in securities as collateral for collection by the Sanitary

Company of any sums adjudged or conceded by the Metropolitan Company to be due to the Sanitary Company under the bond. November 15, 1917, the Sanitary Company brought suit in the United States District Court for the Southern District of New York to recover $56,-556.81, the value of supplies taken over by the Metropolitan Company when it entered into possession of the Barron Island plant January 1, 1917.

November 19, the American Engineering Company filed a creditors' bill alleging that the Metropolitan Company, though solvent, was unable to meet current obligations, and praying for the appointment of receivers. The Metropolitan Company filed an answer, admitting all the allegations of the bill, and was put into the hands of receivers in order to keep it a going concern until its debts were paid; the decree enjoining all persons from bringing any proceedings at law or in equity, or from continuing any pending suits against the company, until after application to the court. The same day the receivers took possession of the plant and continued in possession, paying rent to March 31, 1918, when they were ordered by the court to return the premises to the Sanitary Company. The Sanitary Company re-entered thereafter. February 10, 1919, the Sanitary Company filed proofs of claim with the special master as follows:

First. The sum of $187,500 for rent, payable in advance in three several installments, of $62,500, on the 1st day of April, 1918, on the 1st day of July, 1918, and on the 1st day of October, 1918, together with interest at the rate of 6 per cent. per annum on said several installments from the dates when they respectively became due.

Second. The sum of $10,000, in three installments of $3,333.37 each on April 1, 1918, July 1, 1918, and October 1, 1918, with interest at the rate of 6 per cent. per annum, pursuant to article 12 of the lease.

Third. The sum of $56,556.81 as the purchase price of materials and supplies left on hand on December 31, 1916, by the outgoing tenant, and purchased by the Metropolitan Company under article 13.

Fourth. The sum of $200,000 as damages for the breach of the covenant to return the property in "good, efficient, working condition" under article 3 of the lease.

The District Judge confirmed the report of the special master without opinion.

It is important to discriminate throughout between the rights of the Metropolitan Company and of the receivers of the Metropolitan Company, respectively. The special master held that the Sanitary Company's first claim against the $200,000 fund for rent was good up to October 5, 1918, because, though in possession of the property at least on April 2, it was not using the same for its own benefit until it entered into negotiations with the city of New York for use of the plant. The bond contained the following condition:

"Provided, however, that this obligation is executed upon the express condition that no suit, action, or proceeding at law or in equity shall be had or maintained hereunder or hereon, unless the same be commenced and process served within three months after any claim or cause of action arises to the obligee hereunder or hereon, and in no event later than three months after the termination or other expiration of this lease."

[1] The special master held that the claim for rent due April 1 and July 1 and for five days after October 1 (which quarter he apportioned between the Metropolitan Company and receivers) was not barred by the three months limitation in the bond, because the Metropolitan Company in its answer admitted all the allegations of the bill and was enjoined from bringing suit upon the bond. We concur with him that this suspended the three months limitation, but are of opinion that the Sanitary Company is entitled to prove only the quarter's rent due in advance April 1, 1918, against the Metropolitan Company payable out of the $200,000 fund.

[2] It is not a question of surrender of the lease by the receivers or by the Metropolitan Company and acceptance by the Sanitary Company. The receivers simply refused to adopt the lease, and, not being tenants, could not surrender it, and the Metropolitan Company neither said nor did anything on the subject. The case is one of peaceable re-entry by the landlord for failure of the Metropolitan Company to pay the quarter's rent due April 1, which by its express terms terminated the lease, as the special master held, at the option of the landlord, the Sanitary Company. McCready v. Lindenborn, 172 N. Y. 400, 65 N. E. 208; Cohen v. Carpenter, 128 App. Div. 862, 113 N. Y. Supp. 168. The only inference we can draw from the conduct of the parties is that the Sanitary Company availed itself of its option to re-enter and exclude the tenant for nonpayment of rent and thereby terminated the lease. This must also have been the understanding of the Metropolitan Company, the tenant, because it made no objection whatever to the Sanitary Company's re-entry, nor any demand for possession of the premises, nor any tender of rent. Thereafter no rent was due, but only a right upon the part of the Sanitary Company to recover damages as provided in article 7. No damages have been proved. If the abandonment of the premises by the Metropolitan Company and the re-entry by the Sanitary Company are to be regarded as a surrender and acceptance, the legal consequences are exactly the same.

[3] The record does not make it very clear whether the Sanitary Company re-entered before or after April 2. As the receivers notified the company April 1 that they returned the premises and would have no further use of them, except to remove property belonging to them or to the Metropolitan Company within a few days, and to take care of the horses and mules, we find that the Sanitary Company did not re-enter before April 2. In such case the company would be entitled to recover the whole quarter's rent due April 1 in advance without apportionment. Manning v. Ferrier, 27 Misc. Rep. 522, 58 N. Y. Supp. 332; Sheehan v. Coyle, 36 Misc. Rep. 766, 74 N. Y. Supp. 847; Lamson Co. v. Bowland, 114 Fed. 639, 52 C. C. A. 335.

Rents have been made apportionable between several persons claiming through the landlord (section 2674, New York Code of Civil Procedure), but the tenant remains liable for the whole of it. Moreover, there is ground for saying that the quarter's rent due April 1 in advance falls within the provision of article 7:

"Provided, however, that such termination and re-entry * * * shall not absolve the lessee * * * from liabilities then accrued and whether then payable or payable in the future."

[4] The foregoing considerations also dispose of the second claim of $10,000 for maintenance because the lease was terminated by the Sanitary Company, landlord, and the Metropolitan Company, the tenant, exercised no discretion whatever under article 12, and was thereafter under no obligation to keep the premises in good order and condition.

[4] The special master held that the Sanitary Company's third claim for supplies was barred against the $200,000 fund by the provision in the bond that no suit could be maintained after three months from the date the cause of action accrued. The cause of action accrued January 1, 1917, when the Metropolitan Company took over the premises, and suit was not brought until August 27, 1917, some eight months thereafter. But it was contended at the hearing for the first time that, though the Metropolitan Company could not maintain an action on the bond, it could enforce in equity its lien upon the $200,000 fund; it being collateral. Spears v. Hartley, 3 Esp. 381. But, as the special master held, the $200,000 fund is not collateral for the performance by the Metropolitan Company of its covenants in the lease, but is "collateral security for the collection by second party of any sums adjudged or conceded by first party to be due second party under or on said bond." The collateral is applicable only to sums adjudged or conceded to be due. There has been no adjudication, nor any concession, and therefore the claim was properly disallowed.

[6] While interest does not run on claims against property in the hands of a receiver (Thomas v. Western Car Co., 149 U. S. 95, 116, 13 Sup. Ct. 824, 37 L. Ed. 663), we think the special master properly allowed it on claims payable out of the $200,000 fund specially appropriated to cover them (Pennsylvania Steel Co. v. New York City Railway Co., 216 Fed. 471, 132 C. C. A. 518).

[7] The special master disallowed the fourth claim for failure to return the property in good efficient working condition because the Metropolitan Company had not complied with the arbitration clause. Silver v. Western Assurance Co., 164 N. Y. 381, 58 N. E. 284. Apart from this objection, he construed the lease as requiring the Metropolitan Company to do no more than to restore the premises in the same order and condition as it received them, reasonable wear and tear excepted. It is true that the first paragraph of article 3 required the Metropolitan Company to return the premises "in good efficient working condition, considering the general character of the plant and the work to be carried on there under said contract, reasonable wear and tear excepted." But the outgoing tenant was bound under its lease to return the premises "in good working condition, considering the general character of the plant and the work to be carried on there under said contract." It was further provided that two named appraisers, one to be appointed by the Sanitary Company and the other by the Metropolitan Company, should determine the condition of the property when the Metropolitan Company took possession, when the repairs and replacements had been completed, and when the lease terminated.

A controversy between the Sanitary Company and the outgoing tenant as to what repairs and replacements should be made by it having

been submitted to an arbitrator, the Metropolitan Company was given the privilege of bringing up the premises to the condition in which they should have been surrendered by the outgoing tenant, in which case the Sanitary Company would turn over to it such sums as it should have received from the outgoing tenant. But all doubt about the extent of the Metropolitan Company's obligation is set at rest by the concluding words of article 4 of the lease:

"On the termination of this lease, whether by expiration of the term or otherwise, the lessee shall return to the lessor all the property leased hereunder as the same may be altered or improved in as good condition as when the same was received by the lessee, reasonable wear and tear excepted."

The Special Master was right in disallowing this claim.

The only assignment of error as to priority argued before us is that of the Title Guarantee & Trust Company, trustee of the first mortgage of the Metropolitan Company, that its lien is superior to the lien of the second mortgage to the Columbia Trust Company, as trustee upon the interest of the Metropolitan Company in the $200,000 fund after payment of the Sanitary Company's claim. The special master so held, but as these mortgages do not appear in the record we do not dispose of the question, but simply direct that any claim of the Sanitary Company that has been allowed be first paid out of the fund, making no disposition of the balance.

The decree is reversed, and the court below directed to enter a decree in conformity with this opinion.

## On Petition for Rehearing

PER CURIAM. The special master held that the provisions of article 7 were intended for the benefit of the landlord and might be waived, and that the Sanitary Company had not availed themselves of it. He found that the company had accepted a surrender of the lease by entering into negotiations with the city of New York for a lease of the property in October, 1918. We have held, on the contrary, that there never was any surrender and acceptance of the lease, and that the only inference from the conduct of the parties was that the Sanitary Company re-entered peaceably, in accordance with the provisions of article 7, for nonpayment of rent April 2, 1918, and so terminated the lease and all obligation to pay rent thereunder.

[8] We are now referred to provisions of the New York Code of Civil Procedure regulating ejectment for nonpayment of rent, which in our judgment are not applicable. This is not the case of an action of ejectment, but of a peaceable re-entry in accordance with the contract of the parties.

The petition is denied.