**UNITED STATES v. FORNESS et al. (SAL-
AMANCA TRUST CO. et al.,
Interveners).**

Civil No. 246.

District Court, W. D. New York.

Feb. 14, 1941.

C. C. Daniels and Aubrey Lawrence, Sp. Asst. Attys. Gen., and George L. Grobe, U. S. Atty., and Joseph J. Doran, Asst. U. S. Atty., both of Buffalo, N. Y., for plaintiff.

Charles E. Congdon, of Salamanca, N. Y., for defendants Forness.

George H. Ansley, of Salamanca, N. Y., for City of Salamanca, First Nat. Bank, and Salamanca Federal Savings & Loan Ass'n.

Richard B. Congdon, of Salamanca, N. Y., for Salamanca Trust Co.

Thomas H. Dowd, of Salamanca, N. Y. (G. Sydney Shane, of Salamanca, N. Y., of counsel), for Home Owners' Loan Corporation.

KNIGHT, District Judge.

When railroad building was commenced in the western part of the State of New York nearly a century ago, desirable routes were found through the Allegany and Cattaraugus Indian Reservations therein. The Legislature of the State of New York undertook to authorize railroad companies

chartered by that state to contract with the Chiefs of the Indians for the right to construct and maintain railroads upon the Indian lands, title, however, not to be vested in the companies. The railroads as constructed combined covered some 30 miles in length of the Reservation. Several villages, among them, Salamanca, quickly sprang up along the lines of the railroads. By reason both of its location and the junction of the railroads there, this village grew rapidly until it now has become a city with population of nearly 10,000. When the railroads were first being constructed, aside from the railroad leases, leases, some from individual Indians and some from the Seneca Nation of Indians, were procured by numerous persons. These leases then were relatively few in number, but together covered considerable tracts of land. Numerous lessees procured private acts purported to ratify and confirm their leases, and in 1866 an Act was passed by the Legislature of the State of New York purporting to ratify the leases on all lands theretofore leased in the town of Salamanca. Chapter 472, 89th Session. This Act and the various private acts confirming such leases were held by the Supreme Court of the State of New York to be unconstitutional. In 1875 the Legislature of the State of New York passed a concurrent resolution, Laws 1875, p. 819, asking Congress to enact legislation for the relief of the lessees of these lands, and in that same year Congress ratified the existing railroad leases and provided for the laying out of certain villages within the Allegany Reservation, legalized existing leases for terms up to five years and permitted the further leasing and renewal of leases in the villages laid out, for a term of twelve years. Act of February 19, 1875, 18 Stat. 330. In 1890, 26 Stat. 558, the Act of 1875 was amended to provide for renewal of leases, except railroad leases, for term of ninety-nine years instead of twelve. The Acts of 1875 and 1890 as to leases thereafter executed required that such leasing should be granted by the Seneca Nation through its authorized representatives. All of the present city of Salamanca is within the Allegany Reservation.

The lease involved in this case is one granted by the Seneca Nation of Indians to one Hector G. Forbes and dated February 19, 1892. The defendants Forness are assignees of such lease and the written assignment was executed in 1919. The lease itself specifically states that it was executed by virtue of the terms of the Act of 1875. It covers lands in the City of Salamanca. Since 1919 there has been constructed by the defendants on the premises in question a structure at a cost of $63,000. On October 3, 1934, a mortgage in the amount of $15,000 was executed to the Salamanca Trust Company and that amount remains unpaid.

On March 4, 1939, the Council of the Seneca Indians adopted a resolution that: "All leases made with the Seneca Nation as lessor, which are delinquent in rental payments this 4th day of March, 1939, be and the same are hereby cancelled as of this date." The resolution also provided that notice be given by mail to all lessees claimed to be in arrears and the necessary steps be taken to remove delinquent lessees and collect the arrears of rent. By the terms of the lease with the assignor of the defendants, the lessee agreed to pay the rent of $4 "to be paid in cash annually in advance to the Treasurer of the Seneca Nation of Indians on or before the 19th day of February each and every year during the continuation of this lease. * * *" At the time and upon the date when the aforesaid resolution of the Seneca Nation was adopted, the defendants were in default for the annual rental due on February 19, 1939, for the year 1939 and for several years prior thereto. On or about February 19, 1939, the Superintendent of the New York Indian Agency caused to be sent to these defendants a notice stating the amount of the rent unpaid and the interest thereon, which total showed $44.64. The notice bore this endorsement: "Be sure to bring this statement with you. Rents are payable to the United States Indian Office * * * Rents are due each year in advance on February 19, and must be paid on or before April 20 thereafter, or interest will be charged from the time the rent became due." On March 6, 1939, or two days after the adoption of the aforesaid resolution by the Seneca Nation of Indians, the defendants Forness tendered to an official in the office of the New York Indian Agency a check in the amount of $44.64. That check in the usual course was paid and a receipt of payment for all rent due to that date given by an official in the office of the agency to the defendants Forness. The proceeds of the check were deposited to the credit of the Treasurer of the United States and have been so

retained. It is admitted that the rent unpaid with interest was $44.64. The evidence discloses that the Indian Agent for twenty-five years had annually sent out notices in the same form as that which was sent to these defendants Forness on or about February 19, 1939. The forms of these notices had been approved by the Department of the Interior of the United States.

The government brings this suit to cancel the lease held by these defendants, and for a judgment declaring that the Seneca Nation of Indians is entitled to immediate possession of the premises described in the lease in question. While this suit was originally brought against Frank A. Forness and Jessie Forness only, certain other defendants, namely, the City of Salamanca, the First National Bank of Salamanca, the Salamanca Federal Savings & Loan Association, the Salamanca Trust Company and the Home Owners' Loan Corporation have been permitted to intervene and answer the complaint.

The defendant Salamanca Trust Company alleges that it is the owner of approximately 125 mortgages on various parcels of real estate in the City of Salamanca leased from the Seneca Nation of Indians pursuant to the aforesaid Acts of Congress, upon which there is unpaid the sum of $335,000, and that a tender of the payment of rent on approximately 25 parcels of the lands so mortgaged has been made and refused.

The defendant First National Bank of Salamanca alleges that it is the owner of 16 mortgages on which there is unpaid $20,872.34 on properties leased as aforesaid, and that in the case of three of the individual mortgagors thereof a tender was made prior to April 20, 1939, for payment of the rental due, and that this tender was refused.

The defendant Salamanca Federal Savings & Loan Association alleges that it is the owner of 169 mortgages on which there is unpaid $217,770.10 on lands leased as aforesaid, and that on April 20, 1939, a tender of the payment of rent on 51 of such properties on which the mortgages aggregated $47,857.43 was made, and the tender refused.

The defendant City of Salamanca alleges that it is the owner of 279 pieces of real estate in that city acquired through tax sales and these are of the assessed value of $79,000; that prior to April 20, 1939, the city tendered the rent reserved on 5 of such properties, and that this tender was refused.

The importance of the question involved is apparent.

It is the contention of the government that, by virtue of the terms of the lease under which the defendants Forness hold, the Council of the Seneca Nation of Indians on default in the payment of any rent had authority immediately thereafter to cancel it and a right to judgment declaring said lease cancelled and awarding the Seneca Nation possession. It contends that there can be no reviver of the interest of the defendants save by action of the Council of the Seneca Nation of Indians.

The complaint alleges the execution of the lease, default in the payment of the rent, the adoption of the resolution of the Council of the Seneca Indians, and the right to the immediate possession by said Seneca Nation of Indians. Defendants interpose three defenses: (1) that the statute of the State of New York furnishes a complete defense to this action; (2) that the right to claim a forfeiture has been waived; (3) that the plaintiff is estopped from maintaining the action.

Subsequent to the joinder of issue herein, pursuant to Rule 16 of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, a pre-trial conference was held. After lengthy discussion nothing evolved. Upon the trial the court submitted to the jury the single question: "Did the course of conduct pursued by the United States Agent as Agent for Seneca Nation over period of years from 1916 to 1939 with notice given to defendant in February, 1939, justify belief on the part of defendants Forness that they had the right to pay the rent specified in the notice up to and until April 20, 1939, and did the defendants rely on such relief?" The jury found in the affirmative. Both parties moved for judgment. There was no substantial dispute on the facts. It appears to me now that there was no need to have submitted this question to a jury. The entire question presents a question of law.

The defendants first claim that the State of New York was authorized by the Act of Congress of February 19, 1875, 18 Stat. 330, to extend all its general laws over the City of Salamanca and that Chapter 679

of the Laws of 1892 did extend the general laws of New York to the village of Salamanca. If this is so, the action will be governed by sections 990 et seq. of the New York Civil Practice Act.

Section 8 of the Act of Congress of February 19, 1875, provides: "That all laws of the State of New York now in force concerning the laying out, altering, discontinuing, and repairing highways and bridges shall be in force within said villages, and may, with the consent of said Seneca Nation in council, extend to, and be in force beyond, said villages in said reservations, or in either of them; and all municipal laws and regulations of said State may extend over and be in force within said villages: Provided, nevertheless, That nothing in this section shall be construed to authorize the taxation of any Indian, or the property of any Indian not a citizen of the United States." Here is a specific provision stating what laws of the State may be extended. Where specific provisions are made in a statute the implication is that all other provisions are excluded and special jurisdictional acts are to be strictly construed by the courts and implications as to jurisdiction under their terms forbidden. Choctaw and Chicksaw Nations v. United States, 75 Ct.Cl. 494; Delaware Tribe of Indians v. United States, 84 Ct.Cl. 535, 539; Blackfeather v. United States, 190 U.S. 368, 23 S.Ct. 772, 47 L.Ed. 1099; Schillinger v. United·States, 155 U.S. 163, 15 S.Ct. 85, 39 L.Ed. 108. It is contended that the words "municipal laws" in section 8, supra, are used in contradiction to international laws. Such construction would extend the laws of the State of New York over all activities of this Nation of Indians within the villages named in the Act of 1875. It seems clear when this is considered that the words "municipal laws" were intended to apply only to the State laws for the government and control of villages.

The Act of 1875, supra, also provided that the courts of the State of New York within and for the County of Cattaraugus and the District Courts of the United States should have jurisdiction over "all actions for the recovery of rents and for the recovery of possession of any real property within the limits of said villages [including Salamanca], whether actions of debt, ejectment, or other forms of action, according to the practice in said courts."

Section 7. This means that enforcement of any rights under the Act may be brought about either through the federal or certain state courts. It relates only to the question of practice. Section 7, aforesaid, states nothing about the application of the laws of the State of New York.

Chapter 679 of the laws of 1892 did not alter the situation. The legislative power of the Seneca Nation is vested in its Council by Section 2 of its amended Constitution. The Indians are not subject to the state laws and the process of its courts. The state can not by legislation change that power or authority. This proposition has long since and many times been decided by the Supreme Court of the United States and by the court of last resort in the State of New York. Kansas Indians, 5 Wall. 737, 72 U.S. 737, 18 L.Ed. 667; Worcester v. State of Georgia, 6 Pet. 515, 31 U.S. 515, 8 L.Ed. 483; United States v. Kagama, 118 U.S. 375, 6 S.Ct. 1109, 30 L.Ed. 228; Jones v. Meehan, 175 U.S. 1, 20 S.Ct. 1, 44 L.Ed. 49; Mulkins v. Snow, 232 N.Y. 47, 133 N.E. 123; Matter of Patterson v. Seneca Nation, 245 N.Y. 433, 157 N.E. 734; In re Sah Quah, D.C., 31 F. 327; United States v. City of Salamanca, D.C., 27 F.Supp. 541. The status of an Indian tribe is well defined in Worcester v. Georgia, supra [6 Pet. 560, 31 U.S. 515, 8 L.Ed. 483], as follows: "The Cherokee nation, then, is a distinct community, occupying its own territory, with boundaries accurately described, in which the laws of Georgia can have no force, and which the citizens of Georgia have no right to enter, but with the assent of the Cherokees themselves, or in conformity with treaties, and with the acts of Congress."

Numerous cases are cited by the defendants directed to show that the United States courts take judicial notice of the statutes of the several states, and that remedies whose foundations are statutes of the state are binding upon the courts of the United States within its limits. O'Donnell v. United States, 9 Cir., 91 F.2d 14, certiorari granted 302 U.S. 677, 58 S.Ct. 146, 82 L.Ed. 523 and reversed on another point, 303 U.S. 501, 58 S.Ct. 708, 82 L.Ed. 980; Bauserman v. Blunt, 147 U.S. 647, 13 S.Ct. 466, 37 L.Ed. 316; Ex parte Fisk, 113 U.S. 713, 5 S.Ct. 724, 28 L.Ed. 1117; Erie R. R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 114 A.L.R. 1487. Numerous cases are cited to show this rule has been applied in the matter of evidence, in leases, mortgage redemp-

tion and trespass and unlawful detainer. Such decisions have no bearing here. No case so cited relates to any agreement or lease made as between a Nation of Indians or an Indian and a citizen of a state. O'Donnell v. United States, supra; and Francis v. Francis, 203 U.S. 233, 27 S.Ct. 129, 51 L.Ed. 165, cited as cases where the rights of Indians were involved, present no question comparable to that presented here. The procedure and the rights of the parties are such only as exist under the laws of the United States in harmony with the rights of the Seneca Nation of Indians which occupies the position of a quasi independent Nation. In my judgment the statutes of the State of New York are not controlling.

██ The defendants complain that the government has no right to bring this suit. The court entertains no doubt of the right of the government to bring this suit on behalf of the Indians. It has so held in a similar case, United States v. City of Salamanca, D.C., 27 F.Supp. 541, and decision finds support in numerous decisions of the Supreme Court. Vide Heckman v. United States, 224 U.S. 413, 32 S.Ct. 424, 56 L.Ed. 820; United States v. Minnesota, 270 U.S. 181, 46 S.Ct. 298, 70 L.Ed. 539; United States v. Boylan et al., 2 Cir., 265 F. 165; Worcester v. State of Georgia, 6 Pet. 515, 31 U.S. 515, 8 L.Ed. 483. This court has jurisdiction under subdivision 1, Section 41, Title 28 U.S.C.A.

██ The next defense is that the Seneca Nation of Indians waived forfeiture. In 1901 Congress realizing that the Indians were unable to handle their own financial affairs passed the Act of February 28, 1901, 31 Stat. 819. This Act provided that all moneys which shall belong to the Seneca Nation from existing leases, or leases which might thereafter be made, shall be paid to and recoverable to the United States Indian Agent for the New York Indian Agency. From the moneys which he received he was to pay $2,500 to the Seneca Council; deduct $250 for his own compensation and distribute the balance among the heads of the families of the Seneca Nation. The plaintiff claims that under this statute the Indian Agent was the agent of the government and not of the Indians. Undoubtedly he was the agent of the government for some purposes. For example he was clearly the agent of the government and not of the Indians when he was required to receive the Indian's report on the expenditure of the $2,500 paid to the Council. I think that in performing certain other functions he was just as clearly the agent of the Indians. For example in the resolution adopted by the Seneca Council cancelling those leases where the lessees were delinquent on March 4, 1939, the following language is found: "That a copy of this resolution signed by the Secretary of the Council be delivered to the Superintendent of the New York Indian Agency at Salamanca with the request that he give notice by mail to the said lessees of the cancellation thereof and forward a copy of said notice to the Commissioner of Indian Affairs." This request shows that the Indians themselves regarded the Agent as more than simply a person whose only power was to collect rents. This attitude of the Indians when coupled with the fact that part of the Agent's compensation came from the Indian moneys is in my opinion enough to make him the agent of the Indians in certain respects.

By the Act of February 28, 1901, the Indian Agent was authorized to collect the rents due upon the leases in question. For many years prior to 1939 the Agent had sent to the various lessees notices as hereinbefore set forth. These notices stated the total rent due and the interest charged and notified the lessees that unless the current rent was paid by April 20 interest would be charged thereon. This notice form was supplied by the Interior Department of the Federal Government. From the use of this form for many years, it may fairly be presumed that the Seneca Nation had knowledge of such extension provisions and knowledge that payments were being made in accordance therewith. The Agent had no authority under the Act of 1901 to extend the time for payment of the rent from February 19 to April 20, but no objections to this practice were made by the Senecas. The Seneca Nation of Indians could itself waive the forfeiture or be estopped from enforcing the forfeiture by its own acts or failure to act. The party entitled to terminate may waive. 36 C.J. page 603. The Acts of Congress of 1875 and 1890 gave the Indians the right to make such leases as that in question. These acts removed all disabilities placed on the Indians except that a lease could not be for more than 99 years. The parties therefore stand upon equal footing under the law. By the acquiescence of the Seneca Nation

in the extension of time of payment over the long period involved, the Seneca Nation has ratified the act of their agent in so extending the time. Indianapolis Rolling-Mill Co. v. St. Louis, etc., R. R. 120 U.S. 256, 7 S.Ct. 542, 30 L.Ed. 639; Clews v. Jamieson, 182 U.S. 461, 483, 21 S.Ct. 845, 45 L.Ed. 1183.

It seems to me that this ratification of the acts of the agent is sufficient to prevent forfeiture without notice and without the right to tender the amount unpaid before suit. The position of the government would permit the forfeiture of any of these leases where the rent remained unpaid for a single day after the one date stated in the lease. It is true that in the case of the defendants Forness the rent had not been paid for several years, but such is not the case with respect to certain other defendants. The long established rule as to forfeitures is that "Courts of Law always lean against" them, Woodfalls Landlord & Tenant, 23 Ed., page 406, and "He (the landlord) must take care not to do anything which may be deemed an acknowledgment of the continuation of the tenancy." New York Ins. Co. v. Eggleston, 96 U.S. 572, 24 L.Ed. 481; Knickerbocker Life Insurance Co. v. Norton, 96 U.S. 234, 24 L.Ed. 689.

The following cases: Podren v. Macquarrie, 233 Mass. 127, 131, 123 N.E. 335; Schwab v. Baremore, 95 Minn. 295, 297, 104 N.W. 10; American Engineering Co. v. Metropolitan By-Products Co., Inc., 2 Cir., 267 F. 90, cited by the plaintiff, are none of them authorities for the proposition that a party entitled to possession may not waive his right.

There is another ground for this decision. The provision of the lease upon which the plaintiff relies is that giving it the right of re-entry in case the rent is not paid. The case of Michaels v. Fishel, 169 N.Y. 381, 389, 62 N.E. 425, 427, contains the following language: "At common law the right to re-enter, except when entry can be made without force, is simply the right to maintain ejectment, and we find no statute which has changed the rule." In Van Rensselaer v. Jewett, 2 N.Y. 141, 147, we find this language: "Where the remedy for breach of covenant to pay, or for non-payment, of rent, is by way of re-entry by a common person, there is but a single exception to the rule of the common law, that there must be an actual demand made of the rent previous to the entry; and that oc-

curs where the parties have stipulated in the lease that a re-entry may be for a default of payment of rent without a demand of it. * * * In all other cases where this remedy by re-entry for the non-payment of rent, or for a breach of the covenant to pay rent, is reserved by the lease, and the landlord pursues it under the provisions of the common law, it is indispensable to his right to re-enter, that he should either in person, or by his agent or attorney duly authorized, previously on the very day upon which the rent becomes due and payable, * * * make an actual demand of the exact amount of the rent due, * * *." See also Prout v. Roby, 82 U.S. 471, 15 Wall. 471, 21 L.Ed. 58; Lamson Consol. Store Service Co. v. Bowland, 6 Cir., 114 F. 639; "The Elevator Case", C.C., 17 F. 200.

Furthermore, in this case the defendants have tendered payment of the back due rent to the plaintiff. The effect of such a tender is well stated in Davis v. Taylor, 51 App.D.C. 97, 276 F. 619, 621. That case involved a controversy between a landlord and tenant concerning property located in the District of Columbia. The lease provided that if the rent was not paid within ten days of the due date the lease should wholly cease and determine. The tenant had not paid the rent due but has tendered the sum due plus interest since that time. The court said: "Ever since the decision of the Supreme Court of the United States in Sheets v. Selden, 7 Wall. 416, 421, 19 L.Ed. 166, it has been the settled law of all federal jurisdictions, except where controlled by statute, that the payment of the rent due, with interest and costs, or the tender of them, before the execution of the judgment for possession, relieves against the forfeiture resulting from the default in the payment of the rent. * * * Interpreting the covenant of the lease in question in the light of the law, as we must do, it signifies that since the forfeiture provided for therein has the single purpose of securing the payment of the rent, the moment the rent, interest, and costs are paid or tendered, provided this is done while the tenant is in possession, the forfeiture disappears. The debt having been paid, there is no occasion for resorting to the security." See also Sheets v. Selden, 7 Wall. 416, 19 L.Ed. 166; Prout v. Roby, 82 U. S. 471, 15 Wall. 471, 21 L.Ed. 58; In re Gutman, D.C., 197 F. 472; Sechrist v. Bryant, 52 App.D.C. 286, 286 F. 456.

In the case at bar the defendants have tendered the back rent, and this money is being held by the government pending the outcome of this suit. Applying the above rules of law, it becomes apparent that the effect of this tender is to prevent the forfeiture asked for by the plaintiff. And it is believed that this is so whether we construe the suit as one for forfeiture or for the revocation of a lease.

The defendants may submit findings.

Judgment for the defendants.