Booth, Chief Justice,
delivered the opinion of the court:
The issues in this case arise under defendant’s demurrer to plaintiffs’ petition. The Choctaw and Chickasaw Nations of Indians filed their petition in the case under the provisions of a special jurisdictional act approved June 7, 1924 (43 Stat. 537), which reads as follows:
“ Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That jurisdiction be, and is hereby, conferred upon the Court of Claims, notwithstanding the lapse of time or statutes of limitation, to hear, examine, and adjudicate and render *496 judgment in any and all legal and equitable claims arising under or growing out of any treaty or agreement between the United States and the Choctaw and Chickasaw Indian Nations or Tribes, or either of them, or arising under or growing out of any act of Congress in relation to Indian affairs which said Choctaw and Chickasaw Nations or Tribes may have against the United States, which claims have not heretofore been determined and adjudicated on their merits by the Court of Claims or the Supreme Court of the United States.”
Plaintiffs’ case, predicated upon the allegations' of the petition, embraces the following state of facts:
The treaty of September 15, 1830, known as the Dancing Rabbit Creek treaty, ceded to plaintiffs certain lands in Indian Territory, now the State of Oklahoma, and plaintiffs as Indian nations resided thereon, exercised control thereof, and claimed title thereto until said lands were allotted to the members of the tribes under the act of July 1, 1902 (32 Stat. 641), ratified'by the nations September 25, 1902.
It is further alleged that the treaty of April 28, 1866 (14 Stat. 769), between the plaintiffs and the Government, authorized the construction of railroads through the plaintiffs’ lands, and that railroads were constructed under the authorization, and in the process of construction certain tracts of land were set aside in towns and villages throughout plaintiffs’ lands, which grounds have been commonly referred to as “ station grounds ” and “ station reservations.”
The petition then continues with an allegation that the lands taken by the railroads for station grounds and station reservations were so taken in addition to and in excess of the lands embraced within the authorized right of way of the railroad companies; that they are not necessary for right-of-way purposes, were not granted or ceded by the plaintiffs to the railroads under the treaty of 1866 (supra), and have been unlawfully appropriated by the railroads and used not for - railroad station but for strictly commercial purposes, bringing into the railroads' annual rentals to the amount of at least one million dollars.
In connection with the above and constituting the gravamen of plaintiffs’ cause of action, it is alleged that the *497 Government since tlie ratification of the act of July 1, 1902, i. e., since September '25, 1902, has acted as the guardian or trustee of plaintiff Indians, exercising complete control and supervision of plaintiffs’ affairs, thereby precluding plaintiffs from asserting in court their right to the income from said station grounds and station reservations, and the Government having negligently failed and refused to collect said income, or in any manner protect plaintiffs’ rights in the premises, the plaintiffs under the special jurisdictional act are entitled to a judgment against the United States for one million dollars.
The defendant first challenges the sufficiency of the petition upon the grounds that the allegations therein do not state a claim arising under or growing out of any treaty or agreement between the plaintiffs and the United States, or arising under or growing out of any act Of Congress in relation to Indian affairs concerning plaintiffs’ lands or property; that what the plaintiffs seek is a judgment alleged as damages' for the failure of the United States to protect plaintiffs’ rights, an act of omission upon the part of the Government and not a positive right arising from treaty stipulations or acts of Congress.
The plaintiffs in the brief state:
“ We are not seeking judgment upon the theory that the guardian has been guilty of omissions of duty in the general and broad sense suggested in' the brief of defendant. We are proceeding on the theory that'the Government, by the Atoka agreement and supplemental agreement, assumed the management and control of the estates of the plaintiffs and thereafter failed and refused to carry out its obligation in that respect in that it failed to take steps to collect rentals or take forfeitures on station grounds for the benefit of the plaintiffs.”
It is difficult to ascribe to plaintiffs’ cause of action any other grounds than an omission to perform a duty cast upon the Government, as the plaintiffs claim by law. If the Government was solely responsible for the loss complained of as a trustee or guardian of the plaintiffs’ lands and property, and in that capacity the only party legally capable of asserting plaintiffs’ rights in court, and as such negligently refused and continues to refuse to act, this, in our opinion, is *498 a direct and specific allegation of omission to perform a duty, and plaintiffs’ cause of action is predicated upon the common law liabilities pertaining to the relationship of guardian and ward. ' No treaty or act of Congress is cited wherein the Government assumed liabilities of the character claimed in positive language, and the court must deduce liability from the relationship of the parties if judgment is awarded, and not from treaties or acts of Congress.
Since 1871, in speaking of the relationship of tribal Indians and the Government, it has, we think we may say, been designated by the courts as guardian and ward. The Government by discontinuing the policy of treating with the Indians and adopting the one of direct legislation and dealings in order to conserve, protect, and equitably administer the estates and property of the tribes, passed innumerable acts respecting allotments to the individual Indians and otherwise providing for the disposition of Indian funds accumulated in the course of a governmental policy, but it has never heretofore been contended in this court that because of this governmental policy the common law liability of a guardian with respect to the ward’s property obtained, and that the Government became liable for the acts of a third party to whom lands had been granted by treaties, on the theory that the grant became forfeited.
Special jurisdictional acts conferring jurisdiction upon the court in Indian cases have uniformly provided for adjudication of Indian rights arising out of treaty provisions or acts of Congress which expressly granted to the Indians specific rights and privileges either in the way of lands, payment of money, or other rights incident to and especially concerned with the Indians themselves, or the reservation ceded to the tribe Or nation. Usually the controversy centers upon mutual obligations assumed by the respective parties in treaties or provided for in acts of Congress, and the issue involved is whether, the Government has discharged and observed its obligation under the same.
The Congress has in innumerable special acts, far too many to cite, limited the jurisdiction of the court to the ascertainment of the legal liability of the Government to respond in damages for violation of the express provisions of *499 treaties or acts of Congress, and no precedent exists which would authorize the court to extend the meaning of the terms used so as to comprehend a right to sue thereunder on the theory that as a matter of general law the Government because of treaties and acts of Congress becomes responsible as guardian of the Indians. The policy of the Government as to its relationship with Indian tribes and Indian tribal lands and property is a political one with which we have nothing to do, and until legislation is enacted concerning ancient treaties or acts of Congress the court is without authority to proceed, and even then may not proceed except strictly within the limits and intent of the special act, for it is established law that special jurisdictional acts are to be strictly construed by the court and implications as to jurisdiction under their terms forbidden. Blackfeather v. United States, 190 U. S. 368, Price v. United States and Osage Indians, 114 U. S. 373. In the Osage case the Supreme Court said (p. 375):
“ The right of the plaintiff to recover is a purely statutory right. The jurisdiction of the Court of Claims can not be enlarged by implication. It matters not what may seem to this court equitable, or what obligation we may deem ought to be assumed by the Government, or the Indian tribe, whose members were guilty of this depredation, we can not go beyond the language of the statute and impose a liability which the Government has not declared its willingness to assume. It is useless to cite all the authorities, for they are many, upon the proposition. It is an axiom of our jurisprudence. The Government is not liable to suit unless it consents thereto, and its liability in suit can not be extended beyond the plain language of the statute authorizing it. See, among other cases, Schillinger v. United States, 155 U. S. 163, 166, in which this court said: £ The United States can hot be sued in their courts without their consent, and in granting such consent Congress has an absolute discretion to specify the cases and contingencies in which the liability of the Government is submitted to the courts for judicial determination. Beyond the letter of such consent the courts may not go, no matter how beneficial they may deem or in fact might be their possession of a larger jurisdiction over the liabilities of the government.’ ”
The allegations of the petition, in referring to the various treaties applicable to the case, concede that lands were *500 granted by Congress to the railroads involved, and that the plaintiffs agreed and consented to a right of way through their reservations in accord with said acts. It is also alleged that the grants of land and right of ways to the railroads included all necessary ground for station buildings, workshops, depots, machine shops, switches, sidetracks, turntables, and water stations.
No allegation of the petition questions the legality of what was done, or that the proceedings contravened the express rights of the parties to the treaties. The railroads constructed through the reservations were land-grant roads; all that the plaintiffs now claim is that since their construction and operation many station sites are not now used for station purposes, that inasmuch as the Government was the sole and only agency competent to assert the plaintiffs’ rights to the income from these so-called abandoned lands, its failure so to do renders it responsible to the plaintiffs for the rental paid the railroads for the lands, and that under the act of July 1,1902 (82 Stat. 641), this duty is imperative.
The act of 1902 (supra) upon which the plaintiffs" so confidently rely, is an act “ to ratify and confirm an agreement with the Choctaw and Chickasaw Tribes of Indians, and for other purposes.” The act, a most comprehensive one, covers in great detail the allotment of the plaintiffs’ lands-to the eligible members of the tribes in accord with an agreement between the plaintiffs and the Commission to the Five Civilized Tribes. Its manifest purpose and" intent was to allot in severalty to the individual Indians a stated acreage of land out of the reservations subject only to inhibitions as to alienation, and in keeping with the governmental policy put the Indians more or less upon their individual responsibility. It provided for making a roll of the Indians to ascertain those entitled to allotment, erected a citizenship court, and treated with substantially every phase of Indian rights theretofore existing as tribal rights.
Section 26 (b) of the act of 1902 {supra) (32 Stat. 645) is expressly concerned with enumerated reservations from allotments to be made and provides as to railroad right of ways, etc., as follows:
*501 “All lands to which, at the date of the final ratification of this agreement, any railroad company may under any treaty or act of Congress, have a vested right for right of way, depots, station grounds, water stations, stock yards, or similar uses connected with the maintenance and operation of the railroad.”
There is not only no provision of the act imposing liability upon the Government as herein claimed, but the act itself in all its detail and many provisions discloses an agreement between the Government and the Indians, and provides expressly for the reservation from allotment of the lands involved in this suit. The situation in 1924 is not alleged as different in any respect from what it was in 1902 when the act .was passed and assented to by the Indians, and as a matter of fact the hitherto relationship existing between Indian tribes and the Government, the so-called relationship of guardian and ward, was considerably modified and restricted, the obvious policy of the Government being to give to the plaintiffs an equitable portion of their lands and vest them individually with the same so as to work in the end' their absorption into the body politic of the Nation as other citizens.
We are unable to perceive from the petition wherein a cause of action is alleged under the provisions of the special jurisdictional act. The petition itself is decidedly indefinite and loosely drawn. It would be impossible to answer its general allegations and bring the controversy to an issue as it now stands. No railroads are mentioned, no property described, and nothing alleged except a general statement that railroads have abandoned station sites along their right of ways without in any way disclosing instances or facts sufficient to notify the defendant so that a complete investigation of the claim might be made.
The demurrer will be sustained and the petition dismissed. It is so ordered.
Whalev, Judge; Williams, Judge; LittletoN, Judge; and GREEN, Judge, concur.