Geeen, Judge,*
delivered the opinion of the court:
The suit is based upon the action of certain railway companies in taking over a right-of-way through the Creek country under the Treaty of 1866, 14 Stat. 785, and the Act of'February 28,1902, 32 Stat. 43, and particularly in the appropriation of certain areas along the right-of-way for station reservations and the failure of the defendant to collect and pay to plaintiff the sums alleged to be due the plaintiff by reason of such wrongful action. Plaintiff’s first amended petition alleged that these appropriations were not authorized by the Treaty or statute, that the land was not necessary for railroad purposes and was not used therefor but was rented by the railroads to third persons. Plaintiff also alleged that no compensation was paid for the land so taken and that annual charges prescribed by the Act of 1902 were not paid. Plaintiff further alleged that by the terms of the Treaty and the Act of 1902, the United States guaranteed against intrusion by the railroads and assumed the duty of collecting from the railroads the compensation and annual charges due and recovering money damages. Relief by way of money damages was demanded.
Defendant demurred to plaintiff’s first amended petition, on the ground, among others, that the court was without *594 jurisdiction over the subject matter and that the petition set out no cause of action. This demurrer, at first, was overruled but afterwards a similar demurrer of the Choctaw and Chickasaw Nations v. United States, 75 C. Cls. 494, was sustained. The causes of action being essentially similar, the court withdrew its earlier decision in case at bar and sustained de--fendant’s demurrer upon the authority of the Choctaw and Chickasaw case, supra. More than eight and one-half years after the approval of the Jurisdictional Act (May 24,1924) 43 Stat. 139, plaintiff filed its second amended petition to which the defendant again demurs. It is contended on behalf of the defendant that no new cause of action is set up in the second amended petition or any cause of action whatever, and that following the decision in the Choctaw and Chicha-saw case, the demurrer should be sustained.
In the second amended petition the plaintiff sets up five-causes of action which may be summarized as follows:
In the. first it alleges that by Article I of the Treaty of' June 14, 1866, supra, the United States guaranteed to-the Creek Nation quiet possession of its national domain reserved under the treaty; that by Article V the plaintiff - granted a right of way through its domain for the construction of a railroad; and that under this treaty it became the. duty of defendant to supervise the right of way and protect ■ plaintiff in the quiet possession of its lands not so granted. That defendant authorized two railroad companies to construct roads through the Creek domain and to take rights of way 200 feet in width; that defendant permitted these railroad companies to stake out certain “station reservations” along the rights of way which were not granted by the Treaty-of June 14, 1866, which were not necessary to the operation of the railroads and were never used for railroad purposes'; that such action was an unauthorized intrusion upon the-lands of plaintiff permitted by defendant; that defendant knowing the facts has failed and refused to enforce the-' treaty and put plaintiff in possession of its lands, and therefore is liable to plaintiff for the value of the “station reservations” because of the violation of the treaty.
The second count alleges similar wrongful actions on the-part of other railroad companies which had constructed lines *595 within the plaintiff’s territory under the authority of the Act of February 28, 1902, sufra; whose action it is said it was the duty of defendant "to supervise, and in substance alleges that by reason thereof the defendant became liable to plaintiff in damages under the provisions of said act and the Treaty of 1866.
For a third cause of action, the plaintiff alleges that Section 15 off the Act of February 28,1902, supra, provided that before any railroad should be constructed on any lands taken for railroad purposes full compensation for the lands taken and for damages done by the construction should be made to the tribe; that Section 16 thereof further provided that the companies constructing railroads' under the Act of February 28, 1902, should pay to the Secretary of the Interior for the benefit of the nation through the lands on which the railroad was constructed an annual charge of $15 a mile for each mile of road constructed, but that defendant has failed to collect the compensation due.
For a fourth cause of action, plaintiff alleges that under Section 11 of the Act of April 26, 1906, 34 Stat. 137, the defendant was required to collect all revenues of whatever character accruing to the Creek Nation and that it therefore became the duty of defendant to collect for plaintiff the rents and profits derived from plaintiff’s lands thus unlawfully intruded upon by the railroads, but that in violation of its duties defendant permitted the railroad companies to collect the rents from plaintiff’s land, thus depriving plaintiff of the benefits thereof, and that defendant has never accounted to plaintiff for these rents and profits.
For a fifth cause of action, plaintiff alleges that Section 18 of the Act of April 26, 1906, supra, requires the Secretary of the Interior to bring suit for the collection of any monies or the recovery of any lands claimed by the Creek Nation, and the United States courts in Indian Territory were given jurisdiction to try and determine such suits; that plaintiff has been deprived of the benefits of this provision by reason of the defendant failing to comply therewith, and by reason of its failure so to act defendant is liable to plaintiff for its violation of Section 18.
By Article Y of the treaty referred to in plaintiff’s peti *596 tion, plaintiff Indians granted a right-of-way through their lands to any company that should be duly authorized by Congress and should undertake to construct a railroad from north to south and from east to west through the Creek country and agreed to sell to the United States a strip of land (not owned of occupied by a member or members of the Creek Nation lying along the line of the contemplated railroad) three miles in width.
This authority could only be given by the enactment of a statute which was evidently contemplated by the Treaty.
Accordingly a statute was passed (Act of February 28, 1902, supra,) which provided for the construction of a railway or railways across the domains of the plaintiff tribe which specified particularly that the railway companies might take and use for the purpose of the railway and no other purpose, a right-of-way 100 feet in width through the lands of plaintiff and also an additional strip of 200 feet in width in the length of 2,000 feet in addition to the right-of-way, for stations for every eight miles of road all to be used only for the construction and convenient operations of the railways.
The first and second causes of action are based in part on the provisions in the treaty that “the United States guarantees them (Creek Indians) quiet possession of their country.” This is followed in the treaty by the clause “and protection against hostilities on the part of other tribes” together with other statements in the same connection.
We think this guarantee of quiet possession referred to hostilities on the part of other tribes and not to encroachments by railroads which are not alleged to have done anything against the will of the plaintiff. This construction is strengthened by other provisions in the treaty by which the Creeks agreed to the disposition of their land for railroad purposes, and also by the provisions of the statute which followed.
The guaranty of quiet possession upon which the plaintiff relies could not apply to the right-of-way granted by the treaty for the construction of railways on the lands taken for station purposes. It was not possible for the Indians to have “quiet possession” of lands used in the operation of *597 railways. The statute enacted in pursuance of the treaty specified under what conditions the land might be taken, also the payments which should be made therefor. The defendant was not taking or using the land. The provisions with reference, to payments manifestly apply to railway companies and not to the United States. The defendant neither directly nor by implication agreed it would be liable for damages in event the railway companies did not comply with the statute but instead prescribed the course which plaintiff should take to obtain payment for its land or compensation for its unauthorized use.
A fatal defect of the first two counts is the failure to show or allege any agreement or promise which would make the defendant liable for the action of third parties, which was held in effect to be-necessary in the case of the Choctaw and Chickasaw Nations, supra. In that case, like the one before us, the petition alleged that a treaty authorized the construction of railroads through the plaintiff’s lands, that railroads were constructed under this authorization, and hi the process of construction certain tracts of land were set aside as station grounds. The petition then continues with an allegation that the lands taken by the railroads for station grounds were not necessary for right-of-way purposes, were not granted to the railroads under the treaty, were unlawfully appropriated, and the defendant has refused to protect the plaintiff’s rights. The petition was held insufficient and although no general rule was laid down in sustaining the demurrer one reason given was that “No treaty or act of Congress is cited wherein the Government assumed liabilities of the character claimed in positive language * * The decision reviews the provisions of the Act of 1902 upon which the plaintiff relies and gives as an additional reason for its ruling that there is “no provision of the act imposing liability upon the Government as herein claimed.” (Page 501 of the opinion.)
There are other authorities which support this ruling.
In the case of the Nez Percé Tribe of Indians v. United States, 95 C. Cls. 1, certiorari denied, 316 U. S. 686, it was held that a provision in a treaty that no white man shall be permitted to reside upon the reservation of the *598 Indians did not create an obligation on the part of the United States to respond in damages in event there was wrongful intrusion by the whites. This case also holds in effect that where a treaty does not expressly so provide, its violation by third parties will not impose upon the Government an obligation to respond in damages.
In Pine Hill Compamy v. United States, 259 U. S. 191, 196, the Supreme Court said: “A liability in any case is not to be imposed upon a government without clear words” and it is a well settled rule that the Government can not be sued without its consent which does not appear from either the Treaty or the Act of 1902.
•The substance of the third count is that the plaintiff has not been paid for its lands taken for railway purposes and damages done, in accordance with the statute pleaded, and that it was the duty of the defendant to collect the compensation due; that defendant has failed to perform its duty in that respect and is consequently liable to plaintiff.
The statute provided that certain payments should be made before the land should be taken and also afterwards, but it nowhere required the defendant to collect such payments or make them. Instead it either directly provided that the constructing railways should pay whatever was due or made it plain that it was so intended without creating any liability on the part of the defendant. There is nothing in the statute from which it could even be implied that defendant would be liable if the payments were not made in accordance therewith. This count is therefore subject to the same general objections as counts one and two.
• It will be observed that the fourth count of the petition seeks to recover rents and profits that are alleged to have been unlawfully collected by railroad companies wrongfully permitted to intrude upon plaintiff’s lands. The statute upon which plaintiff relies, Act of April 26, 1906, supra, provides in section 11 thereof that “all revenues * * * accruing to the Creek Nation shall be collected” by an officer of the Department of the Interior, but the cause of action stated in this count is based upon an alleged trespass which, if committed, would not create any “revenues” but merely give cause for an action for trespass. It is obvious that the *599 statutory provision upon which plaintiff bases this count has no application to the claim made in this count, and that nothing is stated therein which would furnish the basis for a suit to recover damages from the defendant on any ground.
As before stated the fifth cause of action alleged that Section 18 of the Act of April 26, 1906, supra, required the Secretary of the Interior to bring suit for the use of the Creek Nation for the collection of any moneys or for the recovery of any lands claimed by the Creek Nation. This fifth count does not expressly allege any duty on the part of the defendant but it is manifestly framed on the theory that it was the duty of the Secretary of the Interior to bring such suit or suits. The plaintiff, however, misstates the language of the section to which reference is made for it •does not require the Secretary to take such action but merely authorized him to bring suit and makes no provision for liability on the part of the defendant in case he failed to do so.
The plaintiff contends that although the Act is permissive in form it is mandatory in effect but the authorities cited do not sustain any such general rule.
The act last cited was entitled “An Act to provide for the final disposition of the affairs of the Five Civilized Tribes in the Indian Territory, and for other purposes” and applied not only to the Creek Indians but the other four civilized tribes. It merely gave the Government permission in settling the affairs of these tribes to bring suit on claims made by them but did not require the defendant so to do. Here again there is no provision imposing liability if the Government fails to bring suit or anything from which such an obligation can be implied and the fifth count must also be held to state no cause of action.
In this connection, the plaintiff cites the case of the United States v. Creek Nation, 295 U. S. 103, 109, but the decision in this case was based upon facts which showed a direct liability on the part of the defendant and it has no application here.
In all of the counts except the last, it is alleged in substance that the acts of the defendant constituted a violation of its duties but these allegations with reference to the “duty” *600 of the defendant are merely conclusions of law and add nothing to the effect of the pleading.
For the reasons stated above, the petition as a whole must be held to state no cause of action but there is another and decisive reason for holding the first four counts insufficient.
The statute providing for the construction of railways through the lands of the plaintiff (Act of February 28,1902, supra), made provisions both for ascertaining the amount due either the tribe or individual occupants of the land taken and for the payment thereof and further provided in Section 8 of the statute last referred to above “that the United States court for the Indian Territory and such other courts as may be authorized by Congress shall have, without reference to the amount in controversy, concurrent jurisdiction over all controversies arising between the said Enid and Anadarko Railway Company and the nation and tribe through whose territory said railway shall be constructed,” and also made a like provision with reference to the inhabitants of the nation or tribe and the railway company. The same, pro visions were also made applicable by the act with reference to the construction of a railway through the Indian lands by any other company duly authorized.
If a railway exceeded its rights in taking over the lands of plaintiff or failed to discharge its obligations to the Indians, then it became directly liable under the statute. It is the railway companies which are alleged to have violated the rights of the plaintiff nation and by such violation, if any, a controversy was created between the railways and the plaintiff nation. A full and complete remedy was provided by the statute in case any controversy should arise, but the remedy created was an action against the railway company and not one against the United States.
.• Plaintiff does not-dispute the validity of this statute but relies upon it in stating the amount of land and the purpose for which it.might be taken in constructing the railway. The provisions for determining the amount to be paid and enforcing the collection thereof are too long to set out here but the United States is not a party to the proceedings under .them and is not responsible in case the plaintiff failed to •make use of them. The statute as a whole shows plainly that *601 the constructing railway companies were solely accountable to the plaintiff for the land taken or used.
It thus appears that whatever duties growing out of the •construction of the railways the defendant may have owed the plaintiff tribe, all have been discharged by the enactment of this statute which made elaborate provisions, not only for the determination by duly appointed referees of the amount due the Indians for their land taken or used, but also for the enforcement of any payments specified by the statute and the settlement of any controversy in relation thereto by conferring jurisdiction on a local United States court over all of these matters.
It must be presumed that the referees and other officers together with the courts discharged their duties under this statute and whenever any controversy arose by reason of the Indians making claim that they had not received the amount to which they were entitled as payment for their lands or use thereof, or denied in any way compensation to which they were entitled, their claims were heard and determined and they received what was due them accordingly. Now, long after the railways have been constructed (as the Court will take judicial notice), and proceedings in the forum provided for plaintiff have been barred on the claims now presented by the statute of limitations, the plaintiff tribe comes into court and seeks to set up new claims never before presented, upon which, if valid, it ought to have acted long ago.
There is nothing in the treaty or in the statute enacted pursuant to it that required the defendant to supervise the payments made to the Indians for the land taken by the railways, determine the amount which should be paid and require its payment for the benefit of plaintiff. On the contrary, the statute provided for the disposition of these matters by the referees and the courts.
The petition fails to allege any facts which would establish any liability or make the defendant in any way subject to suit by the plaintiff and for the reasons stated above we hold that no cause of action is set out either by the several counts of the petition or the petition taken as a whole.
The defendant raises the objection as to part of the claims *602 macle by plaintiff that they are barred by the statute of limitations. What we have said above makes it unnecessary to pass on this issue but it may be said that the objection evidently overlooks the provisions of the Act of August 16,1937, 50 Stat. 650, which was passed after the expiration of the time for filing a petition herein under the original act and gave this court authority to hear plaintiff’s case notwithstanding lapse of time or statute of limitations.
The demurrer to the petition must be sustained and the. petition dismissed. It is so ordered.
JoNes, Judge; Whitakee, Judge; LittletoN, Judge; and Whaley, Chief Justice, concur.

Judge Green was recalled'to active service at this time.